FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 01, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIM M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:19-CV-03267-JTR <br><br> ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 17. Attorney D. James Tree represents Tim M. (Plaintiff); Special Assistant United States Attorney Stephen Dmetruk represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

# JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on October 13, 2011, alleging disability since July 1, 2008,[1] due to obesity, back pain, diabetes, high blood pressure, high cholesterol, depression, and weakness in his legs. Tr. 68. The applications were denied initially and upon reconsideration. Tr. 144-61, 164-77. Administrative Law Judge (ALJ) Ilene Sloan held a hearing June 20, 2013, Tr. 33-67, and issued an unfavorable decision on October 24, 2013, Tr. 16-27. Plaintiff requested review by the Appeals Council. The Appeals Council denied Plaintiff's request for review on January 27, 2015. Tr. 1-5. Plaintiff filed an action with this court and on March 30, 2016, the Court remanded the claim for further proceedings. Tr. 586-97.

On remand, ALJ Raymond Souza held a hearing on January 28, 2019, which was postponed in order to obtain additional evidence. Tr. 603-14. Judge Souza held another hearing on July 19, 2019 and received testimony from Plaintiff, a medical expert, and a vocational expert. Tr. 615-40. On July 31, 2019, Judge Souza issued an unfavorable decision. Tr. 556-73. Plaintiff did not file written exceptions with the Appeals Council, and the Appeals Council did not take its own review of the decision. The ALJ's July 2019 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on November 12, 2019. ECF No. 1.

# STATEMENT OF FACTS

Plaintiff was born in 1970 and was 41 years old as of the amended alleged onset date. Tr. 572. He did not complete high school and has a work history primarily consisting of restaurant work. Tr. 38-39, 60, 349, 355, 1458. Plaintiff has

---

[1] Plaintiff later amended his alleged onset date to September 1, 2011. Tr. 407.

been treated primarily for diabetes and a large hernia that has caused urinary issues and kidney disease.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of

entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 31, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2008. Tr. 562.[2]

At step two, the ALJ determined Plaintiff had the following severe impairments: hernia; substance abuse; alcohol abuse; and diabetes mellitus. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 566-67.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform light exertion level work with the following additional limitations:

---

[2] Despite noting the amended alleged onset date in the Jurisdiction and Procedural History section, Tr. 559, the ALJ adjudicated the claim from the original 2008 alleged onset date. Tr. 562, 573. Therefore, the Court will review the determination from July 1, 2008 through the date of the ALJ's decision.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 4

> The claimant cannot climb ladders, ropes, or scaffolds, can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, and can have no exposure to excessive vibration, no use of hazardous machinery, and no exposure to unprotected heights. The claimant is limited to occupations that require frequent reading of newspapers or ordinary book print and ordinary hazards in the workplace, such as boxes on the floor, doors ajar, etc. The claimant is able to understand, remember, and carry out simple and routine instructions and tasks consistent with SVP levels one and two type jobs with no strict production quotas, with the emphasis being on a per shift rather than a per hour basis.

Tr. 567.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 572.

At step five the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, specifically identifying the representative occupations of cashier II; cleaner, housekeeping; and garment sorter. Tr. 572-73.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 1, 2008 through the date of the decision. Tr. 573.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) failing to follow the remand instructions; (2) improperly rejecting Plaintiff's symptom testimony; (3) improperly weighing the medical opinion evidence; and (4) improperly determining Plaintiff's severe impairments.

## DISCUSSION

**1.    Medical opinion evidence**

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 5

Plaintiff argues the ALJ erred by improperly rejecting the medical opinion evidence from Dr. Merrill, Dr. Crank, and the state agency reviewing doctors. ECF No. 16 at 6-10.

When an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

    a. Dr. Merrill

On May 1, 2013, Plaintiff presented to Dr. Jeffrey Merrill for a disability exam for Washington State DSHS benefits. Tr. 535-40. Dr. Merrill assessed uncontrolled type 2 diabetes, right inguinal hernia, pulmonary nodule, and lumbago. Tr. 535. He completed DSHS disability certification paperwork, opining Plaintiff was severely impaired by his diabetes and massive hernia, and was unable to perform even sedentary work, and that the limitations were likely to last six months. Tr. 542-43. He opined Plaintiff would "definitely improve with treatment" but that it would not be an overnight project. Tr. 535. Finally, Dr. Merrill noted that even though Plaintiff had just presented for an evaluation, he felt obliged to treat him acutely, given his uncontrolled diabetes, and noting Plaintiff was in imminent danger of slipping into diabetic ketoacidosis. *Id.*

///

The ALJ gave this opinion little weight, noting the exam notes from the same day documented minimal findings and the opinion was for a limited duration. Tr. 570. The ALJ stated the findings that Dr. Merrill did document regarding Plaintiff's hernia and his ill appearance were inconsistent with the record, including minimal physical exam findings, the lack of observations of Plaintiff presenting in any significant distress, and Plaintiff's minimal engagement with treatment. *Id.*

Plaintiff argues the ALJ's analysis is insufficient, as Dr. Merrill noted findings on exam that supported the limitations due to uncontrolled diabetes and Plaintiff's massive hernia, and the normal findings regarding his spine and musculoskeletal exams were irrelevant to the opinion. ECF No. 16 at 7. He further argued that the six-month duration was an estimate and the record contained no evidence that Plaintiff actually improved within the expected six months. *Id.* at 8. Finally, Plaintiff argues that the ALJ misinterpreted the meaning of the medical record notations of no acute distress. *Id.* at 12.[3] Defendant argues the ALJ reasonably interpreted Dr. Merrill's exam findings as inconsistent with the severity of the opinion, and that the remainder of the record showed Plaintiff's diabetes was not as poorly controlled as Dr. Merrill believed based on his normal blood sugar levels later in the record. ECF No. 17 at 9-11.

The Court finds the ALJ's analysis to be insufficient. A conflict between treatment notes and a treating provider's opinion may constitute an adequate reason to discredit the opinion of a treating physician or another treating provider. *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to

---

[3] Plaintiff included this argument in his challenge to the ALJ's rejection of Plaintiff's subjective complaints, and cross referenced the same argument within his discussion of the medical opinions. ECF No. 16 at 12-19.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 7

reject a treating physician's opinion). Here, however, substantial evidence does not support the ALJ's conclusion. Dr. Merrill's exam findings the day of his opinion showed Plaintiff's glucose level at 415 and A1c at greater than 14%, leading Dr. Merrill to prescribe insulin and Metformin as Plaintiff was in "imminent danger" of slipping into diabetic ketoacidosis (DKA). Tr. 535, 538. He also documented his inspection of Plaintiff's hernia, which the doctor described as "mammoth." Tr. 535. The fact that some other body system inspections were normal does not detract from the abnormal findings documented by Dr. Merrill.

Similarly, in the ALJ's general discussion of the lack of objective findings supportive of Plaintiff's claim, the ALJ noted normal musculoskeletal findings that do not contradict the abnormal findings regarding diabetes and hernia. Tr. 568-69. The ALJ's reference to Plaintiff's improved A1c readings more than two years after Dr. Merrill's exam does not negate the findings at the time of the exam. While the ALJ referenced numerous times in the record when Plaintiff appeared in no acute distress or with normal constitutional observations, Dr. Merrill noted Plaintiff to be ill appearing, and attributed this to his long uncontrolled diabetes. Tr. 535, 537.

Finally, with respect to the limited duration, Dr. Merrill's statement was only an estimate of how he would expect Plaintiff's condition to progress with treatment. The next treatment record was from over seven months later when Plaintiff was taken to the ER for hypoglycemia after taking his fast-acting insulin without eating. Tr. 1376. The record does not reflect any improvement in his diabetes until his June 2014 hospitalization. Tr. 1184-85. Additionally, records for the two years preceding Dr. Merrill's exam document a lack of control of his diabetes. Tr. 436 (glucose level over 600, but not in DKA); 472 (hyperglycemic in the ER, but not acidotic); 475-79 (glucose level over 600); 494 (glucose level over 700); 517 (uncontrolled diabetes); 522 (poor control of diabetes). Therefore, this was not a specific and legitimate reason to disregard Dr. Merrill's opinion.

Whether Plaintiff's failure to engage in treatment was justifiable or explained was not an issue the ALJ addressed with any specificity, a fact that Defendant admits. ECF No. 17 at 2-3.

On remand, the ALJ shall reconsider Dr. Merrill's opinion and offer specific and legitimate reasons for the weight assigned.

*b. Dr. Crank*

In July 2015, Plaintiff was seen by Dr. Jeremiah Crank, who completed a DSHS disability form. Tr. 1443-56. Dr. Crank noted a primary diagnosis of a large hernia that was causing urinary retention and likely chronic kidney disease (CKD). Tr. 1443. He opined Plaintiff had severe impairment in all physical activities and was unable to meet the demands of even sedentary work. Tr. 1445. He opined Plaintiff needed referrals to a urologist and nephrologist, and a general surgeon for repair of the hernia. *Id.*

The ALJ gave this opinion little weight, noting Dr. Crank had not previously treated Plaintiff, and largely relied on Plaintiff's subjective statements regarding urinary retention. Tr. 571. The ALJ found this assertion inconsistent with other evidence in the record and Plaintiff's refusal of treatment for this condition. *Id.* The ALJ also found the opinion inconsistent with minimal physical exam findings, the lack of observations of significant distress, and Plaintiff's minimal engagement with treatment. *Id.*

Plaintiff argues the record does not indicate Dr. Crank unduly relied on Plaintiff's subjective reports, and that the record indicates ongoing urinary problems. ECF No. 16 at 8-9. Defendant argues the ALJ reasonably interpreted the record and that the Court should not reweigh the evidence.

The Court finds the ALJ's analysis was insufficient. As with the analysis of Dr. Merrill's opinion, the ALJ's references to the lack of objective findings are irrelevant to Dr. Crank's assessment. The record clearly documents Plaintiff's massive hernia and the resulting kidney dysfunction and urinary issues. While

urinary *retention* was not always the specific problem, the record documents persistent kidney and bladder problems resulting from Plaintiff's hernia, both before and after Dr. Crank's opinion. Tr. 1122 (reports kidney pain); 1170-77 (hospitalized for urine retention, bladder obstruction, catheter placement); 1229 (referred to a nephrologist for kidney disease "which appears to be progressing," may need dialysis in near future); 1258 (informed urinary retention may be lethal due to kidney failure or bladder rupture, needs to follow up with nephrology and urology); 1263 (informed chronic kidney disease is likely advanced, but should improve with removal of bladder obstruction); 1329 (creatine levels steadily increasing over past several years, likely due to diabetes and post-renal obstruction, needs catheter placement, may need dialysis within six months); 1510 (hernia causing urinary blockage and likely chronic kidney disease, able to urinate okay but likely still some obstruction); 1582 (having trouble urinating due to size of hernia); 1589-90 (recently in ER due to creatine concentration and high urine residual volume, renal function stable). Therefore, the ALJ's implication that Dr. Crank's opinion is inconsistent with the record is not supported.

Because this claim is being remanded for further consideration of Dr. Merrill's opinion, the ALJ will also reconsider Dr. Crank's opinion and the limitations stemming from Plaintiff's hernia and resultant urinary problems.

  b. DSHS reviewing doctors

Two reviewing doctors, Dr. Dalton and Dr. Palasi, reviewed Dr. Crank's opinion and concurred with the limitations. Tr. 1458, 1467. The ALJ gave these opinions no weight for the same reasons he discounted Plaintiff's subjective reports and due to their reliance on Dr. Crank. Tr. 571.

Because the ALJ must reconsider other medical evidence, including Dr. Crank's opinion, he shall also reevaluate the opinions of the reviewing doctors.

**2. Plaintiff's subjective complaints**

///

1         Plaintiff contends the ALJ erred by improperly rejecting his subjective
2 statements. ECF No. 16 at 10-19.
3         It is the province of the ALJ to evaluate a claimant's statements. *Andrews v.*
4 *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be
5 supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231
6 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for
7 rejecting the claimant's testimony must be "specific, clear and convincing."
8 *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d
9 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must
10 identify what testimony is not credible and what evidence undermines the
11 claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915,
12 918 (9th Cir. 1993).
13         The ALJ concluded Plaintiff's medically determinable impairments could
14 reasonably be expected to cause some of the alleged symptoms; however,
15 Plaintiff's statements concerning the intensity, persistence and limiting effects of
16 those symptoms were not entirely consistent with the medical evidence and other
17 evidence in the record for the reasons explained in the decision. Tr. 568. The ALJ
18 specifically found Plaintiff's allegations were inconsistent with his statements to
19 treating providers, the record contained minimal physical examination findings and
20 a lack of observations of Plaintiff being in distress or discomfort, and Plaintiff
21 received minimal treatment. Tr. 568-70.
22         Because this claim is being remanded for reevaluation of the medical
23 evidence as discussed above, the ALJ shall also reconsider Plaintiff's subjective
24 statements. The Court notes the ALJ failed to consider with any specificity whether
25 there were justifiable explanations for Plaintiff's minimal treatment. Tr. 570.
26 Defendant does not dispute that the ALJ failed to consider any such justifications.
27 ECF No. 17 at 2-3. On remand, to the extent the ALJ relies on the premise that
28

Plaintiff failed to follow prescribed treatment, the ALJ must explore potential reasons for the failure. Social Security Ruling 16-3p.

3.  **Step two findings**

Plaintiff argues the ALJ erred at step two by failing to find chronic kidney disease and depression to be severe impairments. ECF No. 16 at 20-21.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has any medically determinable severe impairments. 20 C.F.R. §§ 404.1520(a)(ii), 416.920(a)(ii). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted). The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

*a. Kidney disease*

The ALJ found Plaintiff's chronic kidney failure not to be a severe impairment, noting Plaintiff's failure to follow through with treatment and that there was little evidence of the condition causing any significant limitations on Plaintiff's ability to perform work-related activities for a continuous 12-month period. Tr. 563.

Plaintiff argues the ALJ erred in failing to find his chronic kidney disease to be a severe impairment. ECF No. 16 at 20-21. Plaintiff asserts the evidence supports a finding of severe limitations and that the record indicates the condition met Listing 6.09 due to three hospitalizations for kidney disease. *Id.* Defendant argues the ALJ considered all of Plaintiff's supported symptoms in formulating the

RFC, and argues the record does not document sufficient hospitalizations for kidney disease to reach listing level. ECF No. 17 at 15-18.

The Court finds the record does not establish sufficient hospitalizations to satisfy the requirements of Listing 6.09. The Listing requires "at least three hospitalizations within a consecutive 12-month period and occurring at least 30 days apart. Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization." 20 C.F.R. Part 404, Subpart P, Appendix 1, §6.09. Plaintiff points to his hospitalizations in June 2014, September 2014, and January 2015 as satisfying the requirements. ECF No. 16 at 21. However, the September 2014 hospitalization did not last for 48 hours. Tr. 1257 (admitted 9/29/14 at 14:11, discharged 9/30/14 at 23:23).[4] Therefore, the requirements of the Listing are not met.

However, because this claim is being remanded for reconsideration of the medical evidence, including Dr. Crank's opinion related to Plaintiff's hernia and resultant kidney disease, the ALJ shall reconsider whether kidney disease is a severe impairment.

*b. Depression*

Plaintiff additionally argues the ALJ erred in failing to find his depressive disorder to be a severe impairment and in rejecting the opinions of all reviewing and examining doctors who assessed a severe mood disorder. ECF No. 16 at 21. Plaintiff argues the ALJ improperly separated the effects of his depressive disorder

---

[4] Plaintiff notes in his reply brief that the hours spent in the emergency room must be counted as well, but does not cite to any evidence that Plaintiff spent an additional 15 hours in the emergency room to reach the 48 hour requirement. ECF No. 18 at 11. The Court can find no evidence of an ER visit prior to Plaintiff's admission to the hospital on September 29.

from his substance use and assumed that all effects were due only to substances. *Id.*

The Court finds any error is harmless. Plaintiff has failed to identify any credited limitations attributable to depression that the ALJ did not include in the RFC. While the ALJ found Plaintiff's mental limitations were the result of substance use, he found Plaintiff capable of no more than simple, routine tasks with no strict production quotas. Tr. 567. The limitations included in the RFC are more extensive than those recommended by any examining or reviewing source. Tr. 75, 123, 442, 565.

However, on remand, the ALJ will consider any additional records submitted in reevaluating step two.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's RFC determination is not supported by substantial evidence in this case and must be reevaluated. On remand, the ALJ shall reevaluate the medical evidence and Plaintiff's subjective complaints, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim in completing the five-step analysis. Additionally, as discussed above, the ALJ should consider and make specific findings regarding any exacerbation or improvement in functioning over the years or failure to comply with prescribed treatment.

///

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED October 1, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE